## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROCKET MORTGAGE, LLC,

        Plaintiff,

v.

J. PATTERSON MORTGAGE
LENDING, LLC, and JAMES C.
PATTERSON, SR.,

        Defendants.

Case No. 2:23-cv-10574
Hon. Stephen J. Murphy, III

---

### PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Pursuant to Fed. R. Civ. P. 55(b)(2), Plaintiff, Rocket Mortgage, LLC ("Plaintiff" or "Rocket Mortgage") moves this Court to enter a Default Judgment in its favor and against Defendants, J. Patterson Mortgage Lending, LLC ("Broker") and James C. Patterson, Sr. ("Patterson") (Broker and Patterson hereinafter are referred to collectively as "Defendants"), due to Defendants' failure to plead or otherwise defend.  In support of this Motion, Rocket Mortgage relies on the attached brief in support.

WHEREFORE, Plaintiff respectfully requests that the Court enter the proposed order attached as **Exhibit A** granting this motion and directing entry of judgment by default against Defendants.

Dated:          September 20, 2023          Respectfully submitted,

_/s/ Matthew Mitchell_
Matthew Mitchell (P69810)
Maddin, Hauser, Roth & Heller, P.C.
28400 Northwestern Highway
Essex Centre-Second Floor
Southfield, MI 48034
(248)-827-1874
mmitchell@maddinhauser.com
_Attorneys for Rocket Mortgage, LLC_

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ROCKET MORTGAGE, LLC,

       Plaintiff,

v.

J. PATTERSON MORTGAGE
LENDING, LLC, and JAMES C.
PATTERSON, SR.,

       Defendants.

Case No. 2:23-cv-10574
Hon. Stephen J. Murphy, III

---

# BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

## **<u>STATEMENT OF ISSUES PRESENTED</u>**

Defendants have failed to plead or otherwise defend this matter.  As a result, the Clerk has entered a default against both Defendants.  Should the Court enter a default judgment in favor of Plaintiff and against Defendants pursuant to Fed. R. Civ. P. 55(b)(2)?

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

Fed. R. Civ. P. 55(b)(2)

## <u>TABLE OF CONTENTS</u>

### <u>Contents</u>

STATEMENT OF ISSUES PRESENTED ................................................................. i

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. ii

INDEX OF AUTHORITIES ..................................................................... iv

SUMMARY OF CASE AND FACTUAL BACKGROUND ................................. 1

STANDARD OF REVIEW ....................................................................... 5

LIABILITY ........................................................................................ 5

   I.   CLAIMS AGAINST THE BROKER ................................................ 5

   II.  CLAIMS AGAINST PATTERSON ............................................. 10

DAMAGES AND RELIEF REQUESTED ............................................... 11

   I.   DAMAGES AGAINST BROKER ................................................ 11

   II.  DAMAGES AGAINST PATTERSON, INDIVIDUALLY ......................... 14

# INDEX OF AUTHORITIES

## Cases

*Antoine v. Atlas Turner, Inc.*,
    66 F.3d 105 (6th Cir. 1995) ............................................................................5

*Attorney Gen. v. Ankerson*,
    148 Mich. App. 524; 385 N.W.2d 658 (1986) .............................................11

*Bank of Am., N.A. v. First American Title Ins. Co.*,
    499 Mich. 74; 878 N.W.2d 816 (2016) ..........................................................6

*Davidson v. General Motors Corp.*,
    119 Mich. App. 730; 326 N.W.2d 625 (1982) .............................................12

*Diamond Lumber Co. v. Anderson*,
    216 Mich. 71; 184 N.W. 597 (1921) ............................................................13

*Fagerberg v. LeBlanc*,
    164 Mich. App. 349; 416 N.W.2d 438 (1987) .............................................15

*Ford Motor Co. v. Cross,*
    441 F. Supp.2d 837 (E.D. Mich. 2006) ..........................................................5

*Hartman & Eichhorn Bldg. Co., Inc. v. Dailey*,
    266 Mich. App. 545; 701 N.W.2d 749 (2005) .............................................10

*Keys v. Hopper*,
    270 Mich. 504; 259 N.W. 319 (1935) ..........................................................13

*Livonia Bldg. Materials Co. v. Harrison Constr. Co.*,
    276 Mich. App. 514; 742 N.W.2d 140 (2007) .............................................10

*Miller-Davis Co. v. Ahrens Constr. Inc.*,
    495 Mich. 161; 848 N.W.2d 95 (2014) ..........................................................6

*Monroe Bank & Trust v. Jessco Homes of Ohio, LLC*,
    652 F.Supp.2d 834 (E.D. Mich. 2009) ...........................................................6

*Paquin v. Van Houtum*,
    343 Mich. 111; 72 N.W.2d 169 (1955) ........................................................14

*Prime Rate Premium Finance Corporation v. Larson*,
    226 F.Supp.3d 858 (ED. Mich. 2016) ........................................................10

*Warren Tool Co. v. Stephenson*,
    11 Mich. App. 274; 161 N.W.2d 133 (1968) ..............................................11

## **Statutes**

28 U.S.C. § 2201 ............................................................................................9

Mich. Comp Laws § 600.705 ........................................................................1

Mich. Comp Laws § 600.715(1)-(2) .............................................................1

## **Rules**

24 Am.Jur., Fraud and Deceit, § 227 ...........................................................14

Fed. R. Civ. P. 55 ...........................................................................................4

## <u>SUMMARY OF CASE AND FACTUAL BACKGROUND</u>

The gravamen of this action is for breach of contract against J. Patterson Mortgage Lending, LLC ("Broker") and for fraud against Broker's sole member, James C. Patterson, Sr. ("Patterson") (Broker and Patterson hereinafter are referred to collectively as "Defendants").  [Complaint, PageID.1-42].[1]

Rocket Mortgage and Broker entered into a Broker Agreement dated November 9, 2018  ("Agreement").  [**Exhibit B**, Declaration of Rocket Mortgage, ¶ 3] ("Plaintiff's Decl.").  Through Patterson, and pursuant to the Agreement, Broker thereafter submitted eight loan applications to Rocket Mortgage for underwriting ("the Applications").  [Plaintiff's Decl. ¶ 4].  Rocket Mortgage thereafter approved the Applications and, in reliance upon the information therein and supporting documents, originated eight loans to individual borrowers (collectively, "the Subject Loans").  [Plaintiff's Decl. ¶ 5].

---

[1] As set forth in ¶¶ 5-7 of the Complaint, this Court has both subject matter jurisdiction and general and specific jurisdiction over the Defendants.  [PageID.3-4].  The Court has personal jurisdiction over Broker by virtue of the forum selection clause within the Agreement and Mich. Comp Laws § 600.715(1)-(2).  The Court has personal jurisdiction over Patterson by virtue of Mich. Comp Laws § 600.705(1)-(2).  Plaintiff has alleged that Patterson personally and knowingly submitted the fraudulent applications and supporting documents to Rocket Mortgage for underwriting in and funding from Michigan, thus transacting business in Michigan and further causing "an act to be done, or consequences to occur, in the state resulting in an action for tort."  *See* Mich. Comp Laws § 600.705(1)-(2).

Following the closing of the Subject Loans, Rocket Mortgage conducted an investigation and concluded that submission of the Applications was part of a deliberate mortgage fraud scheme orchestrated by Patterson.  [Plaintiff's Decl. ¶ 6]. More specifically, and unbeknownst to Rocket Mortgage prior to originating the Subject Loans, the Applications and documents submitted in support thereof contained misrepresentations relating to the borrowers' income, employment, and/or available assets.  [Plaintiff's Decl. ¶ 8].  The misrepresentations specific to each of the Subject Loans, as well as basic identifying information concerning the Subject Loans, are described in the Chart of Subject Loans attached as **Exhibit 2 to Plaintiff's Declaration**.  [Plaintiff's Decl. ¶ 9].  Rocket Mortgage reasonably relied upon the misrepresentations contained within the Applications and supporting documentation by originating the Subject Loans and thereafter selling the Subject Loans to third-party investors in accordance with its ordinary and customary business practices.  [Plaintiff's Decl. ¶ 10].

Due to the misrepresentations contained within the Applications and supporting documents as submitted to Rocket Mortgage by the Defendants, the third-party investors to which Rocket Mortgage sold two (2) of the Subject Loans have required that Rocket Mortgage repurchase said loans and Rocket Mortgage has in fact done so (collectively, "the Repurchased Loans").  [Plaintiff's Decl. ¶ 11].

Due to the misrepresentations contained within the Applications and supporting documents as submitted to Rocket Mortgage by the Defendants, for three (3) other loans, the third-party investors to which Rocket Mortgage sold the loans have required that Rocket Mortgage repurchase said loans, Rocket Mortgage has in fact done so, and, to mitigate its damages, Rocket Mortgage has re-sold the loans in the secondary market to other investors at discounted prices due to the defects with the loans caused by Defendants' submission of the Applications and supporting documents with the false, fabricated, and otherwise fraudulent information described in Exhibit 2 to Plaintiff's Declaration (collectively, "the Sold Loans").  [Plaintiff's Decl. ¶ 14].

Due to the misrepresentations contained within the Applications and supporting documents as submitted to Rocket Mortgage by the Defendants, for two (2) other loans with FHA insurance ("the FHA Loans"), the U.S. Department of Housing and Urban Development ("HUD") has or shortly will require Rocket Mortgage to execute an Indemnification Agreement substantially in the form of **Exhibit 3 to Plaintiff's Declaration**.  [Plaintiff's Decl. ¶ 17].

Due to the misrepresentations contained within the Applications and supporting documents as submitted to Rocket Mortgage by the Defendants, for one (1) final loan, Rocket Mortgage was forced to pay a fee in the amount of $1,890.52

to repurchase the loan from the original investor. Rocket Mortgage only seeks recovery of this fee in connection with this particular loan. [Plaintiff's Decl. ¶ 18].

Rocket Mortgage, through counsel, previously provided Broker with written notices of Broker's breaches of the Agreement with respect to each of the Subject Loans. True and correct copies of these notices are attached as **Exhibit 4 to Plaintiff's Declaration** (collectively, "Notices of Breach"). [Plaintiff's Decl. ¶ 19]. Despite the Notices of Breach, Broker has failed to cure the defects, repurchase the Subject Loans, and/or otherwise indemnify and hold Rocket Mortgage harmless for the damages it has sustained. [Plaintiff's Decl. ¶ 20].

Rocket Mortgage thus was forced to commence this lawsuit on March 10, 2023. [Plaintiff's Decl. ¶ 20]. Both Defendants have been lawfully served with process in accordance with the Federal Rules of Civil Procedure 4(h)(1)(B). Patterson improperly attempted to file an answer to the Complaint on behalf of both himself and Broker and, as a result, the answer was stricken from the record. [PageID.105-107]. Since that time, Defendants have failed to plead or otherwise defend and the Clerk has entered a default against both Defendants pursuant to Fed. R. Civ. P. 55(a). [PageID.113, 117]. Rocket Mortgage now moves for a Judgment by Default against both Defendants pursuant to Fed. R. Civ. P. 55(b)(2).

## STANDARD OF REVIEW

"When a defendant is in default, the well pleaded factual allegations in the Complaint, except those relating to damages, are taken as true." *Ford Motor Co. v. Cross,* 441 F. Supp.2d 837, 848 (E.D. Mich. 2006) (citing in part *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-111 (6th Cir. 1995)).   "Where damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved." *Antoine, supra* at 110.

## LIABILITY

As alleged in the Complaint, the misrepresentations made in connection with the Applications constitute material breaches of the Agreement by Broker and actionable mortgage fraud by Patterson.

## I.   CLAIMS AGAINST THE BROKER

Plaintiff seeks a default judgment on the following counts as to Broker: (1) Count I – Breach of Contract; (2) Count II – Breach of Express Indemnity Agreement; (3) Count III – Specific Performance; and (4) Count V – Declaratory Judgment.[2]

Each of the above claims is premised on the enforcement of the unambiguous terms and conditions in the Agreement.  [PageID.25-46].  To prevail on a breach of

---

[2] As to Broker, only, Rocket Mortgage has elected herein to pursue its remedies under the Agreement – an express contract – and therefore it will not seek a judgment for fraud (i.e., tort) against Broker.

contract claim, Plaintiff must demonstrate: "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am., N.A. v. First American Title Ins. Co.*, 499 Mich. 74, 100; 878 N.W.2d 816 (2016).  In addition, "[a]n indemnity contract creates a direct, primary liability between the indemnitor and the indemnitee that is original and independent of any other obligation." *Miller-Davis Co. v. Ahrens Constr. Inc.*, 495 Mich. 161, 173; 848 N.W.2d 95 (2014).   As with other contracts, the court's "primary task in construing a contract for indemnification is to give effect to the parties' intention at the time they entered into the contract…by examining the language of the contract according to its plain and ordinary meaning." *Id*. at 174.

Here, the Agreement constitutes a valid contract between Plaintiff and Broker. "In Michigan, the essential elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.  Further, a valid contract requires a meeting of the minds on all essential terms." *Monroe Bank & Trust v. Jessco Homes of Ohio, LLC*, 652 F.Supp.2d 834, 838 (E.D. Mich. 2009) (internal citations omitted).  These elements are satisfied here, as the Agreement states clearly that Broker will submit loan applications to Rocket Mortgage for consideration and, once funded, the Broker would be entitled to compensation provided the particular loan was originated in compliance with the requirements of the Agreement.  [*See*

Agreement, §§ 2.2, 2.3, 2.4, and 2.4.1]. In addition, both Broker and Rocket Mortgage were competent to contract and the Agreement involves a proper subject matter with benefits and obligations flowing to both parties. Finally, by virtue of its default, Broker has admitted the factual allegation in the Complaint that the parties entered into the written Agreement. [PageID.4, ¶ 9].

Broker also materially breached the terms of the Agreement. For each of the Subject Loans, Broker made certain representations and warranties to Rocket Mortgage, including but not limited to:

**5.2. COMPLIANCE WITH LENDER POLICIES AND PROCEDURES.** The origination of each mortgage loan complies in all respects with the terms of this Agreement. Each Application submitted was originated by Broker and not by a third party. All Applications, including all mortgage loan documents and information and documentation submitted in connection with such Applications, have been prepared and/or completed in accordance with applicable law and all information provided by each of Applicant and Broker in such Applications are true and correct in all respects and do not fail to disclose any facts which could be material or which would make such information misleading. All broker compensation has been fully disclosed to Applicant in compliance with applicable laws. The Applicant has executed and received a copy of all broker disclosure(s) as required by applicable law and there are no disputes with respect to Broker's compensation in connection with the origination or closing of each mortgage loan.

**5.3 FRAUD.** Broker shall not submit any Application or related documents containing false or misrepresented information. Broker shall be responsible for all actions taken in the course of its performance of its obligations under this Agreement, whether performed by Broker, its employees or licensees, or the Applicant, or any other third party retained by or controlled by Broker or Applicant (other than affiliates of Lender )involved in the origination of the mortgage loan. Broker

understands and agrees that in the event Lender reasonably believes misrepresentations or fraud generated either through the Broker (by any Applicant or third party), by the Broker, or with the Broker's knowledge exist in an Application or any related documents, Lender may report such misrepresentation or fraud to the appropriate state and federal regulatory authorities, law enforcement agencies, and fraud databases. Broker acknowledges the importance of Lender's right and necessity to disclose such information. Broker waives any and all claims for liability, damages and equitable or administrative relief in connection with Lender's disclosure of such information.

**5.4. FACTUAL DISCLOSURE.** All facts relating to any Application and/or related mortgage loan transaction which are known or should be known to Broker which may adversely affect the value of the mortgaged property, the credit, character or capacity of the Applicant, the validity of the mortgage, or any other aspect of the transaction have been disclosed in writing to Lender.

**5.5. NO ADVERSE CIRCUMSTANCES.** Broker has no knowledge of any circumstances or conditions with respect to any Application, mortgaged property, Applicant or Applicant's credit standing that reasonably could be expected to cause third party investors to regard the related mortgage loan as an unacceptable investment, cause the mortgage loan to become delinquent or adversely affect the value or marketability of the mortgage loan.

[Agreement, §§ 5.2, 5.3, 5.4, and 5.5].

Broker, through Patterson, submitted the Applications and supporting documents to Rocket Mortgage.  The Applications contained misrepresented and otherwise fraudulent information, related to the borrowers' income, employment, and/or assets, as set forth in the Chart attached as **Exhibit 2** to Plaintiff's Declaration. For example, in many instances, Defendants misrepresented that borrowers worked for and earned income at certain companies, which was untrue.  For certain of the

Subject Loans, Defendants also falsified bank statements to fraudulently represent that the borrowers had sufficient assets to close.  [*See generally* Exhibit 2 to Plaintiff's Decl.].

While it is alleged that the Defendants made these representations knowingly and deliberately, Section 5.3 of the Agreement also renders Broker liable for misrepresentations made by others during the application process:

> **5.3 FRAUD.** Broker shall not submit any Application or related documents containing false or misrepresented information. Broker shall be responsible for all actions taken in the course of its performance of its obligations under this Agreement, whether performed by Broker, its employees or licensees, or the Applicant, or any other third party retained by or controlled by Broker or Applicant (other than affiliates of Lender ) involved in the origination of the mortgage loan.  (emphasis added)

Stated differently, even if the Applicants themselves knew of or participated in the fraud, the Agreement clearly and unambiguously provides that the Broker is liable.

Finally, as set forth below and in Plaintiff's Declaration, Broker's material breaches of the Agreement caused Rocket Mortgage to incur damages.  In sum, Rocket Mortgage is entitled to a judgment on liability against Broker on Counts I, II, III, and V of the Complaint.[3]

---

[3] The Declaratory Judgment Act, 28 U.S.C. § 2201 gives the Court authority to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

## II.    CLAIMS AGAINST PATTERSON

As to Patterson, he is liable to Rocket Mortgage for fraud (Count IV) as a result of his personal and knowing participation in the mortgage fraud outlined in the Complaint.[4]   To establish a fraud claim, Plaintiff must demonstrate: "(1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *Prime Rate Premium Finance Corporation v. Larson*, 226 F.Supp.3d 858, 868 (ED. Mich. 2016) (citations omitted).

Broker's organization as a limited liability company does not shield Patterson from individual liability.  "It is a familiar principle that the agents and officers of a corporation are liable for torts which they personally commit, even though in doing so they act for the corporation, and even though the corporation is also liable for the tort." *Hartman & Eichhorn Bldg. Co., Inc. v. Dailey*, 266 Mich. App. 545, 549; 701 N.W.2d 749 (2005), quoting *Warren Tool Co. v. Stephenson*, 11 Mich. App. 274,

---

[4] Patterson did not sign the Agreement in his individual capacity and therefore is presumed not to be bound by the contract.  *See Livonia Bldg. Materials Co. v. Harrison Constr. Co.,* 276 Mich. App. 514; 742 N.W.2d 140, 146 (2007) (explaining that where a corporate signatory intends to be bound in his or her individual capacity, "the nearly universal practice is that the officer signs twice – once as an officer and again as an individual.").

300; 161 N.W.2d 133 (1968). *See also Attorney Gen. v. Ankerson*, 148 Mich. App. 524, 557; 385 N.W. 2d 658 (1986) ("It is beyond question that a corporate employee or official is personally liable for all tortious or criminal acts in which he participates, regardless of whether he was acting on his own behalf or on behalf of the corporation").

Here, by submitting the Applications for the Subject Loans with falsified, fabricated, and otherwise fraudulent information, Patterson personally made material misrepresentations to Rocket Mortgage that he knew were false. He also made those false representations with the intent that Rocket Mortgage rely upon them, and Rocket Mortgage did in fact reasonably rely upon the misrepresentations by funding the Subject Loans. These allegations, found in the Complaint and attached Declaration and admitted as true by virtue of Patterson's default, establish his liability for fraud.

## DAMAGES AND RELIEF REQUESTED

### I.   DAMAGES AGAINST BROKER

Rocket Mortgage is entitled to its contractual remedies against Broker. "A party to a contract is ordinarily entitled to the benefit of the bargain he has made. The proper measure of damages for breach of contract is, therefore, the pecuniary value of the benefits the aggrieved party would have received if the contract had not

been breached." *Davidson v. General Motors Corp.*, 119 Mich. App. 730, 733; 326 N.W.2d 625 (1982).

The Subject Loans fall into the four categories outlined above: (a) the two (2) Repurchased Loans where the investors have required that Rocket Mortgage repurchase the loans and Rocket Mortgage has in fact done so; (b) the three (3) Sold Loans where the third-party investors to which Rocket Mortgage sold the loans have required that Rocket Mortgage repurchase said loans, Rocket Mortgage has in fact done so, and, to mitigate its damages, Rocket Mortgage has re-sold the loans in the secondary market to other investors at discounted market prices due to Defendants' fraud; (c) two (2) FHA Loans where Rocket Mortgage has executed, or shortly will be forced to execute, an Indemnification Agreement in favor of HUD; and (d) one (1) additional loan where Rocket Mortgage was forced to pay a fee in the amount of $1,890.52 to repurchase the loan from the original investor.  The particular loans falling into each of the buckets identified above are specifically identified in the Chart of Subject Loans attached as Exhibit 2 to Plaintiff's Declaration.

For the Repurchased Loans, Rocket Mortgage respectfully requests entry of a judgment: (a) ordering Broker, within 30 days, to specifically perform its obligation to repurchase the Repurchased Loans pursuant to paragraph 6 of the Agreement at the Repurchase Price for each loan within 30 days (which is set forth in Chart of

Subject Loans attached as Exhibit 2 to Plaintiff's Decl.);[5] and (b) should Broker fail to do so, the entry of a money judgment against Broker in the amount of the Repurchase Prices for the Repurchased Loans plus attorney fees and costs incurred.

For the Sold Loans, Rocket Mortgage requests a money judgment for losses it has sustained as a result of having to repurchase the Sold Loans from the original investor and thereafter sell the Sold Loans at discounted market prices due to the taint of Defendants' fraud and material breaches of the Agreement.  The amount of principal damages being claimed on the Sold Loans, as well as the formula by which Rocket Mortgage calculated same, is set forth in Plaintiff's Decl. and Exhibit 2 thereto.  [Plaintiff's Decl. ¶¶ 15-16].

For the FHA Loans, Rocket Mortgage requests a Declaratory Judgment declaring that Broker is obligated to defend, indemnify, and hold Rocket Mortgage harmless against all claims, demands, fees, costs, and other liabilities Rocket

---

[5] "It is a well-settled rule that relief by specific performance is not a remedy of right, but rests in the sound discretion of the court and will be refused when it is clearly inequitable to grant it." *Keys v. Hopper*, 270 Mich. 504, 507; 259 N.W. 319 (1935). "The jurisdiction of equity in specific performance proceeds on the supposition that the parties have not only agreed, as between themselves, upon very material matters, but that the matters so agreed on are of such a nature, and the subjects of enforcement so delineated or indicated, either directly or by reference to something else, or so raised to view by legitimate implication, that the court can and may collect, and in their proper relations, all the essential elements, and proceed intelligently and practically in carrying into execution the very things agreed on and standing to be performed." *Diamond Lumber Co. v. Anderson*, 216 Mich. 71, 85; 184 N.W. 597 (1921).

Mortgage may incur by virtue of it being forced to sign indemnification agreements with HUD due to Broker's submission of the Applications and supporting documents with the false, fabricated, and otherwise fraudulent information described in Exhibit 2 to Plaintiff's Declaration.  [Plaintiff's Decl. ¶ 17].

Finally, for the remaining Subject Loan, Rocket Mortgage requests a money judgment for the fee in the amount of $1,890.52 it incurred when it was forced to repurchase the loan from the original investor due to Broker's acts and omissions described herein.  [Plaintiff's Decl. ¶ 18].

## II.    DAMAGES AGAINST PATTERSON, INDIVIDUALLY

The measure of actual damages in an action founded upon fraud was aptly stated as follows by the Michigan Supreme Court, to-wit:

> The proper rule of damages in this case is set forth in 24 Am.Jur., Fraud and Deceit, § 227:
>
> The great weight of authority sustains the general rule that a person acquiring property by virtue of a commercial transaction, who has been defrauded by false representations as to the value, quality, or condition of the property, may recover as damages in a tort action the difference between the actual value of the property at the time of making the contract and the value that it would have possessed if the representations had been true. In other words, the defrauded party is entitled to recover the difference between the real and the represented value.

*Paquin v. Van Houtum*, 343 Mich. 111, 123; 72 N.W.2d 169 (1955).  Therefore, as against Patterson, Rocket Mortgage is entitled to the value of the loans in the marketplace in the absence of the defects created by Patterson's fraud.  Rocket

Mortgage also is entitled to any incidental or consequential damages occasioned by the fraud. *See Fagerberg v. LeBlanc*, 164 Mich. App. 349, 357; 416 N.W.2d 438 (1987).

For the Sold Loans, Rocket Mortgage's actual damages for fraud have been established by a re-sale of the Sold Loans in the secondary market. Stated differently, Rocket Mortgage is entitled to the difference in value of the Sold Loans without the defects occasioned by Patterson's fraud versus the value of the Sold Loans with the defects occasioned by Patterson's fraud. Therefore, Patterson is liable to Rocket Mortgage for the losses it sustained on the subsequent re-sale of the Sold Loans in the secondary market and the additional consequential damages relating to same, pursuant to the formula in Plaintiff's Declaration. [Plaintiff's Decl. ¶¶ 15-16]. The total damages on the Sold Loans total $222,594.24.

For the Repurchased Loans, the difference in value between the loans as represented versus the loans with the subsequently discovered fraud has yet to be established because Rocket Mortgage has not yet been able to sell these loans on the secondary market. Rocket Mortgage has, however, incurred incidental and consequential damages on these the Repurchased Loans totaling $5,607.78, which represent the two fees Rocket Mortgage had to pay the investors and/or their servicers on two of the Repurchased Loans, which are identified in the Chart of Subject Loans attached as Exhibit 2 to Plaintiff's Decl. Therefore, Rocket Mortgage

requests judgment against Patterson in the total amount of $228,202.02. Moreover, to the extent Rocket Mortgage later sells the Repurchased Loans identified in the Chart of Subject Loans (with the exception of loan no. xxxxxx3381) in the secondary market, within thirty (30) days of the sale(s), Plaintiff requests the ability to petition the Court to amend the Judgment against Patterson, individually, to include Rocket Mortgage's losses on those loans as well.

WHEREFORE, Plaintiff respectfully requests that the Court enter the proposed order attached as **Exhibit A** granting this motion and directing entry of judgment by default against Defendants.

Dated:        September 20, 2023                 Respectfully submitted,

*/s/ Matthew Mitchell*
Matthew Mitchell (P69810)
Maddin, Hauser, Roth & Heller, P.C.
28400 Northwestern Highway
Essex Centre-Second Floor
Southfield, MI 48034
(248)-827-1874
mmitchell@maddinhauser.com
*Attorneys for Rocket Mortgage, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2023, the foregoing Motion for Default Judgment, Brief in Support of Motion and this Certificate of Service were

electronically filed with the Clerk of the Court using the Court's electronic filing system, which will send notification of such filing to those who are currently on the list to receive e-mail notices for this case, and a copy was mailed via first class mail to: James C. Patterson Sr., at 4800 Sugar Grove Boulevard, Suite 385, Stafford, TX 77477.

/s/*Matthew Mitchell*
Matthew Mitchell (P69810)